## WHEN CUSTOM OF INSURANCE AGENTS IS BINDING ON THE COMPANY.

Circuit Court of Cuyahoga County.

THE NEW YORK LIFE INSURANCE COMPANY v. THE CITY TRUST COMPANY.

Decided, January 20, 1908.

*Insurance—When Company Not Estopped by Custom of its Agent— When Question of Agency Should be Submitted to Jury.*

1. Where a policy of insurance provided that premiums should be payable at the home office of the company on a certain date in each year but that they might be paid to any agent of the company producing receipts therefor signed by the president, a vice-president, actuary or secretary of the company, and a policy holder paid to an agency of the company his yearly premium, receiving therefor a receipt which was not signed by any of the specified officers, *Held:* That the company would not be bound by any custom prevailing at the agency in question in receiving premiums and issuing receipts other than the receipts specified in the policy unless it had actual notice of the custom, or that the custom had continued so long and the manner of doing business was such as that in the nature of things the insurance company should and would have known of it by the exercise of reasonable care.

2. Where an agency of an insurance company receives a premium and issues a receipt therefor, other than the official receipt provided for in the policy, if it does so for the purpose of forwarding the premium received to the home office or to the agency through which the policy was issued, it thereby becomes the agent of the insured and not the insurer, and the question of whether or not it is so acting should be submitted to the jury where the company denies the receipt of a premium.

*Garfield, Howe & Westenhaver,* for plaintiff in error.
*Bacon & Clay* and *W. H. Boyd,* contra.

MARVIN, J.; WINCH, J., and HENRY, J., concur.

On the 21st day of June, 1902, the New York Life Insurance Company issued to Richard W. Taylor, Jr., a policy on his life to the amount of $5,000. This policy was issued from the Park

Row branch of the company in New York City, and not from the home office. At the time the policy was issued the first installment of premium, amounting to $140.55, was paid by Taylor, the policy itself containing a receipt for such payment. And it was provided in the policy that the same should continue in force until the death of the insured, provided there should be paid on the 21st day of June, 1903, and thereafter on the 21st day of June of each succeeding year a premium in the amount of $140.55. It was further provided that if any premium was not paid at the date when it became due, the insurance should automatically continue for the period of 60 days after such payment became due. It was further provided in the policy that:

"1.   Only the president, a vice president, the actuary or the secretary has power in behalf of the company to make or modify this or any contract of insurance, or to extend the time for paying any premium, and the company shall not be bound by any promise or representation heretofore or hereafter given by any person other than the above.

"2.   Premiums are due and payable at the home office, unless otherwise agreed in writing, but may be paid to any agent producing receipts signed by one of the above named officers and countersigned by the agent. If any premium is not paid on or before the date when due, the liability of the company shall be only as hereinbefore provided for such case."

It was further provided that if the premium was not paid when due, the company would restore the policy as of the date of such non-payment on the payment of the premium as within one month after the due date, with interest at the rate of 5% per annum.

This period of one month is spoken of as "the one month of grace." It is further provided that the insured, if payment is not made at the time it becomes due, or within one month thereafter, could only be reinstated on written application from the home office with evidence of insurability, etc.

The insurance company maintain an office known as the Cleveland branch in the city of Cleveland, from which policies were issued and at which payments of premiums were made. At this office there was a cashier, an assistant cashier and a number of

clerks.  Taylor was the cashier of this office for a considerable
period, and so was familiar with the manner of doing business
in this office, but was not such at the time this policy was issued.
The policy spoken of was assigned by Taylor to the City Trust
Company, and such assignment was registered at the home office
of the company.  Taylor died on the 10th of September, 1903,
and the trust company brought suit against the insurance com-
pany upon the policy.  The insurance company denied liability,
one of the grounds being that the installment of premium due on
the 21st day of June, 1903, was not paid either at that date or
at any date, and in any event that it was not paid nor attempted
to be paid until more than one month after the date when it
became due.  This was the main issue tried in the case.  The
result of the trial was a verdict and judgment for the trust
company, and this proceeding is brought by the insurance com-
pany seeking to reverse that judgment.

The claim on the part of the trust company was and is that
this premium was paid at the Cleveland office on the 22d day of
June, 1903, to Edward C. Kilfoyle, who was then the assistant
cashier at the Cleveland office, and that by the course of busi-
ness carried on for a long period of time before this payment,
a custom was established, known to the insurance company, of
payments being made in this wise to officers and clerks in charge
of the Cleveland office.  It is conceded that Kilfoyle did not
deliver to Taylor at the time this payment was made a receipt
signed by either the president, a vice-president, actuary or sec-
retary of the company, nor did he have in his possession any
such receipt which he could have delivered to Taylor, but, it is
said, that he did deliver a receipt to Taylor reading as follows:

"CLEVELAND, O., June 22, 1903.

"Received from R. W. Taylor, Jr., one hundred and forty
and 55/100 dollars, prem. due June 21st, 1903; policy No.
3295168.

$140.55."

On which receipt was stamped by a stamp of the insurance
company the words "New York Life Insurance Compay," and
that this was signed "C. E. Griffey, Cashier, Kilfoyle."

This receipt was offered in evidence. Objection was made to its being received. This objection was overruled and an exception noted. It is claimed that this was error. We find no error in the admission of this receipt, when coupled with proper instructions as to what must be shown on the part of the trust company to make such receipt binding upon the insurance company. It should be said here that it was established that the words stamped upon the receipt were so stamped by Kilfoyle and that he wrote the words, "C. E. Griffey, Cashier," and signed his own name "Kilfoyle." Of course since the payment to Kilfoyle, if it were made, could not avail the trust company, unless authority in Kilfoyle to receive and receipt for the money was shown, one of the things necessary to make the case of the trust company was to show that payment was made; that to be followed by showing that the party to whom such payment was made had authority from the company in some manner to receive and receipt for the money. As a step in making this proof we think it was proper that the receipt should have been admitted in evidence. There remained, however, the necessity of proving that Kilfoyle had the proper authority. It is not claimed that there was any express authority given to Kilfoyle or to any other officer or employee of the company at the Cleveland office, but it is urged that such authority could be shown by a custom long continued, known to and acquiesced in by the company. Evidence was introduced tending to show such custom; at any rate tending to show that both Griffey and Kilfoyle had received money in payment for installments of premiums on policies not issued from the Cleveland office, and for which no receipt signed by the officers specified as those whose signatures must appear on the receipt to make it valid, and that money so received by these parties was forwarded to the home office or to the branch office at which such policy was issued.

Kilfoyle denied that the money was paid to him or that any payment was made to him on account of this policy at the time the receipt was dated, but he makes no satisfactory explanation of how the receipt came to be given. Besides this denial on the part of Kilfoyle that there was no payment made to him at the time the receipt is dated, there is evidence of a transaction on the

23d of July, 1903, which tends to sustain this denial on the part of Kilfoyle.

The jury reached the conclusion that the money was paid to Kilfoyle on the 22d of June and that this receipt was given to Taylor on that day.  A majority of the court do not feel that we would be justified in reversing the judgment on this, as being against the weight of the evidence, though it must be conceded that it is not unlikely that another jury with the same evidence might come to a different conclusion.

On the part of the plaintiff in error it is urged, that in the face of the written provisions of the policy, to which attention has been called, no custom shown to have existed at the Cleveland office of receiving payments of premiums in cases like the one under consideration, could constitute a waiver on the part of the company; that the exact terms of the policy should be complied with.  With this proposition we do not agree.  The several members of this court, however, are not at one upon all of the propositions involved in this case, but we are all agreed that the insurance company could not be bound by any custom prevailing at the Cleveland office of which it did not either have actual notice, or that the custom had continued so long and the manner of doing business was such as that in the nature of things the insurance company ought to have known of it, and would have known of it by the exercise of reasonable care, and we are of the opinion that judgment should be reversed for failure on the part of the court to give to the jury the ninth proposition, which was requested by the insurance company to be given to the jury, before argument, reading as follows:

"The court further charges the jury that the act of C. E. Griffey or said E. C. Kilfoyle, or any other agent of the defendant company in receiving or attempting to receive money from insured persons on account of premiums on policies at its office in Cleveland at times when the premium receipt signed as required by the terms of said policy had not been forwarded to said office, if such receipt was for the purpose merely of forwarding such money separately to the home office or to the office or agent, in possession of the official receipt, does not constitute a custom of practice which can be relied upon as evidence of a waiver on the part of the company of the provisions of the policy

requiring payment only to be made at the home office unless otherwise agreed in writing or to an agent producing a receipt signed by the president, a vice-president, the actuary or secretary of the.company, but such act of said agent or other person is to be regarded as making such person the agent of the party paying the money for the purpose of remitting the same to the person duly authorized to receive it.''

And we are further agreed that the case should be reversed by reason of the following language which was the last instruction given by the court to the jury in its general charge.

This reads:

''But if you find from the evidence and by the greater weight of the evidence that Taylor paid this money on June 22, 1903, that this money was paid and received at the local office of the defendant company, paid to the agent of the company or to his assistant; and you find that it was the custom of said branch office and its officers for a long time prior to the 22d of June, 1903, to accept such payments in the absence of the official receipt, then you will return a verdict for the plaintiff for the full amount, together with interest from December, 1903, to the first day of this term of court, to-wit, April 1st, 1907.''

This proposition leaves out the essential element that this custom was known to the insurance company and assumes that if it had existed for a long time prior to the 22d of June, 1903, the company must have known of the custom.

The words, ''for a long time,'' are indefinite, and might be construed by the jury as meaning several months or several years, and might naturally be construed by the jury as an instruction to find on such custom and against the insurance company without reference to whether the custom had ever come to the knowledge of the officers of the company or to the company itself.

Immediately preceding the instructions last quoted, the court used this language:

''Or, if you find that the transaction of July 23—a month thereafter and a day—related to this policy and this premium, then your verdict will have to be for the defendant. That is, if the money paid to the defendant company by Taylor on July 23, included or intended to include the $140.55 due and payable

on this policy, your verdict will have to be for the defendant. Or, if you find from the evidence and from the preponderance of the evidence that the sum of $140.55 was paid by Richard W. Taylor on June 22, but was paid to a person not authorized to receive it, was paid to an agent of the defendant company who Taylor knew, or by the exercise of ordinary care could have known, had no authority to receive such payment, and that there was no custom or practice in said office of taking and collecting premiums in the absence of official receipts—if it was known to the defendant that there was no such custom, then your verdict will have to be for the defendant in this case.''

It can not be doubted that this statement is a true statement of the law, but we think the implication in the statement is that the verdict could only be found for the defendant so far as this matter of paying to the proper person is concerned, unless they should find that Taylor affirmatively knew that the party to whom he paid was not authorized to receive it, or knew that there was no custom or practice in said office of taking and collecting premiums in the absence of official receipts. The language used to the jury was calculated to mislead them, and might well be considered by them as an instruction that, in order to relieve the company from liability by reason of this payment, it must affirmatively appear that Taylor knew that the party whom he paid was not entitled to receive it.

For the reasons pointed out the judgment in this case is reversed and the cause remanded to the court of common pleas.